IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT SOLOMON,

    Petitioner,                    No. CIV S-08-1545 EFB P

    vs.

FERNANDO GONZALES,

                              ORDER

    Respondent.

_____/

    Petitioner is a state prisoner without counsel seeking a writ of habeas corpus under 28 U.S.C. § 2254. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to the parties' consent. *See* 28 U.S.C. § 636; *see also* E.D. Cal. Local Rules, Appx. A, at (k)(4). Respondent moves to dismiss this action on the grounds that it is untimely and includes unexhausted claims. For the reasons explained below, the court finds that the petition is untimely and respondent's motion should therefore be granted.[1]

////

////

---

[1] The court finds the petition must be dismissed as untimely, and accordingly, need not address the issue of exhaustion.

1

## I.     Procedural History

On November 2, 1998, the Sacramento County Superior Court sentenced petitioner to a determinate state prison term of twenty-seven years and four months for his convictions of second degree robbery, assault likely to produce great bodily injury, resisting arrest, and two counts of intimidating a witness, with a number of sentencing enhancements found true.  Resp.'s Mot. to Dism. ("Mot."), Docs. Lodged in Supp. Thereof ("Lodg. Doc.") 1.  On September 1, 1999, the California Court of Appeal, Third Appellate District affirmed the judgment and on November 17, 1999, the California Supreme Court denied petitioner's petition for review.  Lodg. Docs. 2, 4.  Petitioner then filed eight *pro se* state post-conviction challenges to the pertinent judgment, the earliest of which was filed on May 12, 2001 in the Sacramento County Superior Court.[2]  Lodg. Doc. 5; *see also* Lodg. Docs. 7, 9, 11, 13, 15, 17, 19.  On June 12, 2008, petitioner filed the instant petition challenging his 1998 conviction.  Dckt. No. 1.

## II.    Statute of Limitations

A one-year limitations period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

There is no statutory tolling of the limitations period "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed . . . ."  *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).  But once a petitioner properly files a state post-

---

[2] The court deems the filing date for each of petitioner's habeas petitions to be the date reflected on the certificate of service for the respective petitions.  *See Houstan v. Lack*, 487 U.S. 266, 276 (1988) (prisoner's notice of appeal deemed timely filed on the date it was delivered to prison staff for delivery to the court); *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) (applying mailbox rule to petitions filed in state court).

conviction application the period is tolled, and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). If the limitations period has run, however, it cannot be revived by a collateral action. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

The limitations period may be equitably tolled where a habeas petitioner establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). In light of this pronouncement, the Ninth Circuit has reiterated that the threshold necessary to trigger equitable tolling is very high, and clarified that equitable tolling only applies where a petitioner shows that despite diligently pursuing his rights, some external force *caused* the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). Petitioner has the burden of showing facts entitling him to equitable tolling. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

**III. Discussion**

In this case, the statute of limitations began to run when petitioner's conviction became final on direct review. *See* 28 U.S.C. § 2244(d)(1)(A). The California Supreme Court denied review on November 17, 1999. Lodg. Doc. 4. The conviction became "final" within the meaning of section 2244(d)(1)(A) when the time for filing a petition for writ of certiorari expired ninety days later, on February 15, 2000. Supreme Ct. R. 13; *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). The one-year limitations period commenced running the following day. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, petitioner had until February 15, 2001, to file his federal habeas petition. However, he did not file the instant petition until June 12, 2008. Dckt. No. 1. Absent tolling, his application in this court is over seven years late.

**A. Statutory Tolling**

As noted, petitioner filed eight petitions for post-conviction relief in the state courts. Lodg. Docs. 5, 7, 9, 11, 13, 15, 17, 19. The earliest of these petitions was filed on May 12, 2001. Lodg Doc. 5. Because petitioner waited until three months after the limitations period expired to file his first state habeas petition, he is not entitled to statutory tolling. *See Jiminez*,

3

276 F.3d at 482.

### B. Equitable Tolling

Petitioner, who received the assistance of another inmate in preparing and filing his opposition brief, asserts that equitable tolling is warranted due to his "well below normal cognitive abilities and mental illness." Pet'r's Opp'n to Mot. ("Opp'n") at 4, Ex. B (Decl. of D. Wright). According to the inmate who assisted petitioner, petitioner insisted that he receive help with his opposition brief as petitioner "is truly unable to comprehend what must be done . . . ." *Id.* at 6.

A prisoner is entitled to equitable tolling only where he demonstrates that an extraordinary circumstance stood in his way and prevented timely filing. *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007). Mental incompetency can constitute an extraordinary circumstance beyond the prisoner's control that can equitably toll the statute of limitations. *Calderon v. U.S. Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), *overruled on other grounds by Woodford v. Garceau*, 538 U.S. 202, 205-06 (2003)). Specifically, where a petitioner's mental incompetence *caused* his failure to meet the filing deadline, the deadline should be equitably tolled. *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003); *see also Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) ("[M]ental incompetence is not a per se reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." (internal citation omitted).) Determining whether petitioner's alleged mental incompetency warrants equitable tolling is a "highly fact-dependent" inquiry. *See Laws*, 351 F.3d at 922 (quoting *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc)).

Petitioner submits that he has been under the care of mental health experts since 1977 at the age of ten and remains under such care while in prison. Opp'n at 4. He claims to be "severely mentally disabled" and argues he "should not be held to the same standard as 'functional' prisoners able to comprehend and proceed on basic matters on their own," and that

4

his "handicap . . . effectively hinders every one of his life activities." *Id.* at 6, 9. Petitioner has provided portions of his medical records dating back to 1997. *See id.*, Ex. A.[3] The records show that in 1997, petitioner's health problems included asthma, chronic back pain, allergies, and psychiatric illness. *Id.* at 6. Additionally, a record dated December 7, 1998, notes petitioner's history of suicidal ideation. *Id.* at 9. A record from the following year, dated December 7, 1999, shows that petitioner was referred to mental health services on an emergency basis because he was "very unpredictable," "hears things," and was suicidal. *Id.* at 4. Additionally, a record dated January 26, 2000, notes petitioner's reports of depression, an anger problem, and of hearing "voices" since he was a juvenile. *Id.*

Respondent argues that the relevant period of time for the equitable tolling inquiry is from February 16, 2000 to February 15, 2001, the one-year period in which petitioner had to timely file his federal petition. Resp.'s Reply to Opp'n ("Reply") at 5. Thus, respondent has lodged with the court forty-seven pages of petitioner's mental health records for this time period. *See* Lodg. Doc. 22. As set forth in more detail below, the records show that during this timeframe, petitioner was diagnosed as having depression with psychotic features, had ongoing prescriptions for psychotropic medications, and was perceived by medical professionals to have a below-average intellectual capacity.

A "Psych Note," dated February 2, 2000 described petitioner as having depression and psychotic features, but noted that petitioner was non-psychotic, non-suicidal, and non-delusional. *Id.* at 1. The note also states that petitioner should continue taking Thorazine, Zoloft and Benadryl. *Id.*

The next record is dated April 26, 2000 and appears to have been written by somebody other than the drafter of the February 2, 2000 note. The April 26, 2000 record states that there is not enough information to support or refute a diagnosis, as petitioner's symptoms were not acute.

---

[3] Since the documents filed as Exhibit A do not have page numbers, the court has assigned them numbers in consecutive order, beginning with "1."

5

*Id.* at 2. The drafter of the April 26, 2000 record also indicated that petitioner seemed to have a lower than average IQ. *Id.*

On May 4, 2000, petitioner was seen by Dr. Glen Shipley, M.D. *Id.* Shipley noted petitioner's "poor comprehension of the world of business and legal matters, his inability to spell or do simple math," and noted his impression that petitioner was "of borderline intellectual functioning." *Id.* at 3. Shipley also noted that petitioner "did not seem actively psychotic in the sense of responding to auditory or visual hallucinations" and that his speech was relevant and goal-directed. *Id.* Shipley noted that petitioner should continue taking Thorazine, Zoloft and Benadryl. *Id.*

On the same day, Shipley noted that petitioner "was desperately trying to get some paper work completed for a court hearing, with a final date of 5-5-00 . . . [but] didn't exactly know what he needed from me as he was trying to do what he had been told to do by someone in the law library." *Id.* at 2-3. Shipley drafted a letter, identifying the subject as "Information Requested by Pelican Bay State Prison Inmate Vincent Solomon, CDC P17188." Opp'n, Ex. A at 1. It reads:

> Mr. Solomon is a patient in the Clinical Case Management System at Pelican Bay State Prison. He has been diagnosed as having a depressive disorder with psychosis. He is being treated for this condition with the following psychotropic drugs:
>
> > Chlorpromazine 200 mg daily
> > Sertraline 150 mg daily
>
> He is incapable of representing himself in legal matters due to illiteracy and the above listed psychotic diagnosis.

*Id.* Shipley's next record, dated June 21, 2000, notes that petitioner did not keep his appointment and that petitioner had been "non-compliant with medication." Lodg. Doc. 22 at 4.

////

////

////

6

1    Notes dated July 24, 2000 reflect that a psychologist reviewed petitioner's medical chart,
2 which showed ongoing prescriptions for "psychotropic medicines," including Zoloft and
3 Thorazine.[4]  *Id.* at 4.

4    Records dated August 1, 2000 and August 4, 2000, reveal that petitioner displayed no
5 signs of psychosis or distress. *Id.* at 5, 6. On these days, petitioner complained that he had not
6 been receiving his medication.[5] *Id.* It is also noted that petitioner should continue to take
7 Sertraline and Thorazine.[6] *Id.* at 6.

8    Records dated August 8, 2000, August 15, 2000, and August 22, 2000, reflect that
9 petitioner declined his psychiatric sessions. *Id.* at 7, 8, 9. However, it is noted in each record
10 that petitioner showed no signs of psychosis or distress. *Id.* Records dated August 24, 2000 and
11 August 29, 2000 also note that petitioner showed no signs of psychosis or distress. *Id.* at 8-10.
12 On August 24, 2000 petitioner reported missing his morning dose of Sertraline "because the
13 medicine is brought around too early." *Id.* at 8.

14    From September 5, 2000 through September 26, 2000, petitioner again declined to
15 participate in his psychiatric sessions. *Id.* at 11-14. However, the records reflect that petitioner
16 showed no signs of psychosis or distress and his condition was assessed as "stable." *Id.* The
17 record dated September 12, 2000 also notes that petitioner reported he had completed a health
18 care request regarding his asthma and high blood pressure. *Id.* at 12.

19    On September 29, 2000, petitioner was referred for an emergency evaluation after he
20 threatened to set the trash in his cell on fire and covered the window and door of his cell so staff
21 could not see him. *Id.* at 15. The evaluation notes indicate that petitioner was angry because his

---

[4] The record also notes a plan to "liaison with Chief Psychologist and Chief Psychiatrist to facilitate compliance with mandatory court orders . . . ." *Id.* at 4. The nature of such "court orders" is not apparent from the record.

[5] It is not apparent from the record which medication petitioner claimed to have not received.

[6] "Sertraline" appears to be generic for Zoloft.

7

television was taken away, and that although angry, petitioner was able to verbally vent his frustration and anger, was non-psychotic, goal directed in his conversation and showed "no sign of mood or thought disorder in exacerbation." *Id.* It was also noted that petitioner's judgment and insight was "below average" for an "Ad Seg felon." *Id.* at 16.

Records from October 3, 2000 through December 12, 2000 note that petitioner declined most of his sessions, but showed no signs of psychosis or distress, that his condition was stable, and that he should continue with his treatment. *Id.* at 17-32.

In a record dated December 18, 2000, petitioner's doctor noted that he "refused to write a memo to [petitioner's] judge requesting an attorney to help him with his appeal . . . ." *Id.* at 32. The record also notes that petitioner complained about having to walk "to get [his] lab-work," and that the nurse wakes him in the morning to give him Sertraline. *Id.* The doctor noted his inclination to taper off petitioner's medications, "as he refuses lab or any cooperation necessary for proper med management." *Id.* The doctor noted that petitioner was alert, oriented, and that his speech was organized and responsive. *Id.* The doctor also noted there was "no current evidence of psychosis or depression beyond that of other prisoners." *Id.*

Petitioner's mental health records from December 19, 2000 through February 13, 2001 note that petitioner declined most of his sessions, but showed no signs of psychosis or distress, that his condition, described as a substance induced psychotic disorder was stable, and that he should continue with his treatment. *Id.* at 33-47. Additionally, on January 16, 2001, petitioner requested that a form be completed on his behalf for renewal of his non-psychotic drug prescriptions. *Id.* at 39.

Based on these records, and in light of petitioner's filings in this district and in the state courts (discussed below), the court does not find a causal link between petitioner's mental state and his delay in filing his federal petition. *See Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (whether petitioner was able to file earlier habeas petition in state court is relevant to whether he was unable to file a timely petition in federal court because of mental disability).

Petitioner's mental health records show that during the relevant time period, he was non-psychotic, non-suicidal, and non-delusional. He understood the need to comply with court deadlines and knew how to ask for assistance when required. There are times noted where petitioner did not receive all of his medications, but there is no indication that these events rendered him incapable of challenging his conviction or otherwise had a detrimental impact on him. Some of the records, such as the May 4, 2000 record, describe petitioner as having a lower than average intellect. Lodg. Doc. 22 at 3. Indeed, Shipley drafted a letter stating that petitioner was "incapable of representing himself in legal matters due to illiteracy and . . . [his] psychotic diagnosis." Opp'n, Ex. A at 1. However, given that petitioner showed no signs of psychosis during the relevant time period, the court cannot find that petitioner's "psychotic diagnosis" prevented him from timely filing his federal habeas petition. *See Lawless v. Evans*, 545 F. Supp.2d 1044, 1049-50 (C.D. Cal. 2008) (petitioner not entitled to equitable tolling where mental condition responded well to treatment and petitioner was "mostly stable" during relevant period of time); *Stewart v. Martel*, No. 2:08-cv-1477 KJN P, 2010 U.S. Dist. LEXIS 14697, at *10 (E.D. Cal. Feb. 19, 2010) (petitioner diagnosed with "major depression disorder with psychotic features" not entitled to equitable tolling where he failed to show that his mental illness prevented his timely filing). Moreover, Shipley's May 4, 2000 notes reflect that petitioner's speech was relevant and goal-directed, and suggest that petitioner generally understood the need to prepare and file documents in order to comply with a court-imposed deadline.

Additionally, neither a limited intellectual capacity nor illiteracy necessarily warrants equitable tolling. *See Humphrey v. Clark*, No. CV 09-4035 GAF (DTB), 2009 U.S. Dist. LEXIS 122867, at *9-15 (C.D. Cal. Nov. 3, 2009) (citing numerous cases in support of propositions that illiteracy/below average intelligence do not constitute extraordinary circumstances warranting equitable tolling). Here, petitioner acknowledges the availability of other inmates, albeit "untrained," to assist him with his filings. Opp'n at 4-5. Petitioner also had a civil action

9

pending in this district from October 20, 1998 to January 15, 2002. Lodg. Doc. 23 (copy of docket for case number 2:98-2044 LKK GGH). During the limitation period, petitioner filed numerous documents with the court. *Id.* (showing that from March 15, 2000 to September 27, 2000, petitioner filed two notices of a change of address, three requests for appointment of counsel, a request for leave to proceed in forma pauperis, a request for judicial notice, requests for admissions, two requests for extensions of time, responses to special interrogatories, and responses to a request for production of documents); *see also id.* (showing that from October 9, 2001 to March 7, 2002, petitioner filed a request for appointment of counsel, a request for extension of time, objections to the magistrate judge's findings and recommendations, a pretrial statement, and a notice of appeal). Additionally, petitioner subsequently filed eight state habeas petitions, two of which were filed in 2001 and one of which was filed in 2002. *See* Lodg. Docs. 5, 7, 9. Petitioner's ability to rely on other inmates for assistance, coupled with the fact that he successfully filed documents in this district during the limitation period, and shortly thereafter in the state courts, suggest that his illiteracy and/or lower than average intellect were not barriers to timely filing a federal habeas petition. *See Tibbs v. Adams*, No. Civ. S-05-2334 LKK KJM P, 2009 U.S. Dist. LEXIS 90551, at *18 (E.D. Cal. Sept. 29, 2009) (finding petitioner's "real-world achievements" precluded equitable tolling despite petitioner's "comprehension difficulties.").

### C. Actual Innocence

Finally, petitioner attempts to circumvent the statute of limitations bar by claiming he meets the standard for the "actual innocence" gateway articulated by *Schlup v. Delo*, 513 U.S. 298 (1995). Opp'n at 11. As a threshold matter, neither the Supreme Court nor the Ninth Circuit has decided whether a showing of actual innocence excuses noncompliance with the federal limitations period. *See Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002). Assuming such an exception exists, petitioner has not met the requisite standard.

Under the actual innocence standard, a petitioner must establish that the alleged constitutional error "has probably resulted in the conviction of one who is actually innocent."

*Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Petitioner must demonstrate not just that a reasonable doubt exists in light of the new evidence, but rather, that in light of the new evidence, no reasonable juror would have found him guilty.  *Schlup*, 513 U.S. at 329; *see House v. Bell*, 547 U.S. 518, 537 (2006) (a credible *Schlup* gateway showing "requires new reliable evidence . . . that was not presented at trial.").

Here, petitioner has not offered any new evidence to demonstrate his actual innocence. Rather, petitioner argues there was insufficient evidence to sustain his robbery conviction and professes his innocence. *Id.* at 12-18, 21.  Without any evidence to support his claim, petitioner falls far short of the showing required by *Schlup*. *See Doe v. Menefee*, 391 F.3d, 147, 161 (9th Cir. 2004) (habeas court must determine trustworthiness of new evidence to determine whether petitioners can take advantage of *Schlup* gateway).  Thus, petitioner has not met his burden of showing his trial probably resulted in the conviction of one who is actually innocent.

**IV.  Conclusion**

For the foregoing reasons, the court concludes that respondent's motion to dismiss must be granted, and this action be dismissed as time-barred.  The court also finds that an evidentiary hearing, on either the equitable tolling issue or the actual innocence issue, *see* Opp'n at 19-22, is unnecessary.

Accordingly, it is hereby ORDERED that:

1. Respondent's May 26, 2009 motion to dismiss the petition as barred by the statute of limitations is granted.

2. Petitioner's request for an evidentiary hearing is denied.

3. The Clerk of the court is directed to close the case.

4. A certificate of appealability is issued as to the issue of whether petitioner is entitled to equitable tolling.

Dated:  March 31, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE